IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBEL BING,

    Plaintiff,

    v.                                    Civil Action No. PX-18-1543

BRIVO SYSTEMS, LLC

    Defendant.

******

## MEMORANDUM OPINION

Pending in this employment discrimination case is Defendant Brivo Systems, LLC's ("Brivo") Motion to Dismiss. ECF No. 10. Plaintiff Robel Bing has responded, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, Defendant's Motion is GRANTED.

## I.    BACKGROUND

In 2016, Bing applied to work at Brivo as a Customer Care Representative. ECF No. 1.[1] Bing submitted an employment application, which, among other information, inquired about Bing's prior criminal convictions. Bing responded, "Misdemeanor 2003 Misdemeanor 2015." ECF No. 10-4 at 1. Brivo employees Candice Scott, who is an African-American woman, and Baudel Reyes interviewed Bing in person, and thus obtained "firsthand knowledge of [Plaintiff's] ethnicity." ECF No. 1-1 at 2 n.2.

Brivo offered Bing the position, which he accepted under the terms of Brivo's written job offer. ECF No. 10-3, 10-5. The employment offer conditioned Bing's employment on Brivo

---

[1] Although neither party describes the nature of Brivo's business, the Court takes judicial notice that per Brivo's website, it provides physical security systems and technical support services for commercial businesses. *See* Brivo, *Packages*, www.brivo.com/physical-security-packages (last visited January 22, 2019).

1

verifying that "[t]he information provided to the Company to evaluate [Plaintiff's] application was complete and true . . . [and Plaintiff] agree[ing] to and successfully pass[ing] a background check . . . ." *Id.* Bing accepted this offer and the parties mutually determined that Bing would begin work at Brivo on October 17, 2016. Bing also executed written authorization allowing Brivo to conduct a background check using Justifacts Credential Verification, Inc. ("Justifacts"). On October 6, 2016, Justifacts had completed its written report on Bing, after the offer letter was sent but before Bing resigned from his previous employment.

On October 17, Bing reported to Brivo for his first day. As part of his orientation, he met with Bing employees, Charles Wheeler and Richard Crowder. During this initial meeting, Wheeler confronted Bing about information Wheeler had learned by googling Bing. Specifically, Wheeler questioned Bing in a hostile and aggressive manner about a Baltimore Sun article that referenced Bing as having given his roommate a loaded gun, which was then used in "Halloween celebratory gunfire," injuring another person. ECF No. 1-1 at 2; ECF No. 10-8 at 1. No formal charges were lodged against Bing. ECF No. 1-1 at 2. After Bing admitted that he was the same Robel Bing referenced in the article, Wheeler "terminated [Bing] on the spot." *Id.* Bing further avers that despite his having notified Brivo that he quit his prior job to take the Customer Care position, and complied in every way with the pre-employment requirements, Bing was given no forewarning that termination may be a possibility and no opportunity to address the nature of the allegations in the Sun article.

Understandably upset, Bing filed suit in this Court, alleging race and sex discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), as well as violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

2

("FCRA"). Brivo now moves to dismiss all counts. For the following reasons, the motion must be granted.

## II. STANDARD OF REVIEW

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and viewed in the light most favorable to him. *Twombly*, 550 U.S. at 555. The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted). However, "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "'[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within

the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

### III. DISCUSSION

#### A. Title VII

##### i. Discriminatory Discharge

Bing avers that he was discharged on his first day of work because of his race and gender. Because the Complaint allegations do not aver any direct evidence of discrimination, Bing's discrimination claims are subject to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000); *Riddick v. MAIC, Inc.*, 445 F. App'x 686, 689 (4th Cir. 2011). To sustain a *prima facie* case of discrimination, a plaintiff must demonstrate: (1) membership in a protected group, (2) discharge, (3) while otherwise fulfilling Defendants' legitimate expectations at the time of his discharge, and (4) under circumstances that raise a reasonable inference of unlawful discrimination. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). If Bing establishes a *prima facie* case, the burden shifts to Brivo to offer a legitimate, non-discriminatory reason for his discharge. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Once Brivo provides such a reason, the burden then shifts back to Bing to raise a genuine dispute as to whether the proffered reason is mere pretext for discrimination. *See id.*

4

Importantly, however, plaintiff is not required to "plead facts sufficient to establish a prima facie case . . . to survive a motion to dismiss." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Rather, the complaint must simply include "sufficient factual allegations to support a plausible claim" of discrimination. *Id.*; *see also Chowdhuri v. SGT, Inc.*, No. PX 16-3135, 2017 WL 3503680, at *5 (D. Md. Aug. 16, 2017). Unfortunately for Bing, the Complaint does not meet this threshold.

It is undisputed that Bing is a member of a protected class who was discharged on his first day of work after having been found qualified for the position. However, Bing has proffered no facts allowing a plausible inference that his discharge was fueled by unlawful discrimination. According to the Complaint, the Brivo employees responsible for hiring him—Candice Scott and Baudel Reyes—knew of Bing's race and gender because they had conducted an in-person interview before hiring Bing. ECF No. 1-1. When Bing showed up for work, however, Brivo employees confirmed with Bing an incident involving his loaning a firearm that subsequently was used in a shooting. This new information led to his termination "on the spot." *Id.* In this respect, the Complaint avers facts establishing that he was terminated because of his involvement in the shooting incident—the veracity of which Bing confirmed. By contrast, no evidence exists by which this Court could infer Bing was terminated on account of race or gender. Brivo concluded that Bing's involvement in the firearm incident rendered him unfit for the position. Nothing about this determination, based on the facts averred in the Complaint, demonstrates that this reason was put forward to obscure Brivo's discriminatory animus.

In fact, where an employee's hiring and firing occur close in time and involve the same decision-makers, "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991);

*see also Liu v. Bushnell*, No. TDC-17-1398, 2018 WL 3093974, at *10 (D. Md. June 22, 2018). Bing specifically avers that he was subject to unlawful discrimination by "one or more employees in management, whose role within the company organization grants a singular decision-making authority with which to initiate and carry out hiring and firing processes within the company." ECF No. 1-1. Bing also confirms that Scott was involved in both his hiring and firing. ECF No. 13-4 at 20 (alleging that both Scott and the Security Director "concluded that I am not fit for the position."). Accordingly, no facts permit this Court to infer plausibly that Brivo's ultimate decision to terminate Bing constituted unlawful discrimination. This claim must be dismissed.

### ii. Hostile Work Environment

Bing also alleges that he was "subjected to hostile interrogations, without any basis or prior warning," and "berate[d]" for failing to disclose the shooting incident. ECF No. 1-1 at 1, 2. This questioning, while unpleasant and unfortunate, does not amount to an actionable Title VII claim.

Most favorably construed, Bing seeks relief for having been subjected to a hostile work environment. To state a hostile work environment claim, Bing must aver facts from which this Court could infer plausibly that: (1) he experienced unwelcome harassment; (2) based on his race or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) liability may be imposed on the employer. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 528 (D. Md. 2015), *aff'd as modified,* 659 F. App'x 744 (4th Cir. 2016) (approving the district court's use of the above-cited elements in granting the defendant judgment on the pleadings); *see also Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011). The severity and pervasiveness of the alleged harassment depends on "the frequency of the discriminatory conduct; . . . whether it is physically threatening or

humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)) (internal quotation marks omitted). "A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (quoting *Harris*, 510 U.S. at 21) (alteration in original). By contrast, harsh or callous exchanges alone are insufficient to support the claim. *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)).

Bing alleges a hostile environment based on a single incident that he characterizes as an interrogation, and during which he was "berate[d]" about the shooting information discovered during Wheeler's Google search. Although Wheeler's deportment was unwelcome, there is no evidence Wheeler was motivated by discriminatory animus. Nothing about Wheeler's exchange with Bing, directly or indirectly, alludes to Bing's race or gender. Rather, the Complaint details a heated exchange between Wheeler and Bing after Wheeler learned about Bing's having loaned a firearm used in a shooting. Accordingly, viewing the Complaint most favorably to Bing, the hostile work environment claim must be dismissed.

### B. Fair Credit Reporting Act

Bing also alleges that Brivo violated the FCRA by relying on a Google search as a basis for his termination and without warning Bing in advance or providing him the opportunity to refute the allegations. ECF No. 1-1. Notably, Bing does not challenge the formal background

7

check that Brivo had performed prior to Bing's first day.² Rather, Bing only references Wheeler's Google search, which generated the Baltimore Sun article, as the basis for Brivo's FCRA liability. Accordingly, Bing's claim must fail.

Section 1681b(b)(3)(A) of the FCRA renders an employer liable under the statute if the employer failed to provide the prospective employee a copy of any consumer report on which the employer's adverse action is based. The FCRA also mandates that the employer describe in writing the "rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title." *Id.*

Critical to the Court's analysis, however, is the FCRA's definition of "consumer report." A consumer report is:

> [A]ny written, oral, or other communication of any information by **a consumer reporting agency** bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . .

15 U.S.C. § 1681a(d)(1) (emphasis added).

A "consumer reporting agency" is further defined as persons which, "for monetary fees, dues, or on a cooperative nonprofit basis" regularly assemble or evaluate consumer credit information or other consumer information "for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). Nowhere does Bing allege that Brivo is a consumer reporting agency as defined under the statute. Thus, the Google search that Wheeler, as a Brivo

---

² Although the Complaint references the background report that Brivo retained from Justifacts, Bing emphasizes in his Complaint that the Justifacts report was obtained prior to his first day of work, and that he disclosed information consistent with the Justifacts background report prior to being hired for the job. ECF No. 1-1. Accordingly, the Court cannot plausibly infer that Bing's FCRA claim is based on any alleged FCRA violation based on the Justifacts report.

employee, performed on Bing's first day of work cannot as a matter of law constitute a "consumer report" under the FCRA, if for no other reason than it was not generated by a "consumer agency." *See Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 858 (M.D.N.C. 2005) (dismissing FCRA claim where defendant Citibank did not qualify as "consumer reporting agency."); *see also Menefee v. City of Country Club Hills*, No. 08 C 2948, 2008 WL 4696146, at *3 (D. Ill. Feb. 12, 2016) (finding that employer is not a "consumer reporting agency" where it collects information on potential employees without furnishing reports to third parties). When viewing the Complaint allegations as true and most favorably to Bing, the FCRA claim does not survive challenge.

## IV. CONCLUSION

Bing is understandably unhappy at Brivo's decision to renege its employment offer after learning of the incident reported in the Baltimore Sun article, and after Bing had quit his other job to work for Brivo. The Court certainly sympathizes with Bing's predicament, and accepts as true the facts as described. But these facts simply do not, in the Court's view, support a charge of discrimination or harassment under Title VII or an FCRA violation. For this reason, the Court DISMISSES Bing's Complaint without prejudice.

| 1/22/2019 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |